Curia, per Butleh, J.
The company whose case is before the court having derived its rights through the other companies referred to in the circuit decision, has the right to exercise all the powers, and enjoy all the franchises, that have been conferred on those companies by the different Acts of the Legislature under which they held *443 their charters. The essential provisions of these charters and Acts, are sufficiently noticed in the judgment below, and I shall advert to them in connection with the propositions and questions which seemed to be involved in the case.
The first proposition which I shall consider, is, whether the company has the right to extend its road to the boundary street of Charleston, by running it over the lands of private individuals ; and if so, to have those lands valued, through the intervention of commissioners, to be for that purpose appointed by the court 1 And secondly, if a purchase may be effected by the mode indicated, is the company bound to make a shewing to the court, of the necessity for requiring the lands to be taken for the purposes of the road 1
It was conceded in argument, that the company could extend its road to Boundary street, by running it over the lands of private individuals, provided the purchase of the lands could be effected by the consent of their owners. But it was strongly urged, that the land of the individual before the court could not be purchased of him, by the valuation of commissioners. It was not denied but that, under the original charter created by the Acts of 1827 and 1828, the company would have had the right now contended for, but that it has been lost or exhausted by the original location of the road; to wit: that until the Act of 1832 was passed, the terminus of the road was fixed, by the act of the company itself, at Line street. It has been supposed that this point has been settled by the adjudication of this court, and that now the company has no other power to extend its road, except under the provisions of the Act of 1832. The Act has the following clause, (the only one that bears on the question,) — “ Be it further enacted, that the said company be, and they are hereby, authorized and empowered to construct a single track of their road, and the necessary number of turn-out tracks, from the present termination of their road, at Line street, on Charleston neck, to the boundary line of the city of Charleston, through any public streets, roads or squares, on the said neck. Provided, that no locomotive *444 steam engine be nsed below Line street; and provided also, that the Rail Road be so constructed as not to impede the ordinary passage of carriages and persons along- the said roads, streets or squares.” 8 Stat. 380. Now, here was a power given to the company that it did not possess tinder its charter; to wit: to use the public streets and other highways of Charleston neck. They' were highways that had been laid out by public authority, and were under the control of another corporation, or organized body; It was thought necessary to give the Rail Road Company the power to use them sub modo, that is, subject to certain specific restrictions and limitations. The company could not use such public highways by locomotive steam engines, nor could they have but a single crack, nor even use that, except in subordination to the convenience of others. Suppose the company did not choose to avail themselves of this Act, but had insisted on running the road on the land of private individuals, subject only to the provisions of the charter, which had given them the power, under certain terms, to cross public highways throughout the extent of their road. I can see nothing that would have prevented them. Indeed, it has been conceded that the company can now reach Boundary street, by running the road over private lands, under the sanction of voluntary purchases. It seems to me, that where the company undertakes to extend its road, not through public streets or squares, hut over private lands, there is nothing to prevent them from availing themselves of the ample powers of the Acts of ’27 and }28. These Acts, as well as that of 1835, give the company authority to take private property, at a valuation to be put upon it, in spite of the owner, through the intervention of commissioners. The power is so explicitly given, that its existence and extent, as ascertained in the charters, have not been questioned. The question is, whether it has been forfeited by a temporary acceptance of the provisions of the Act of 1832. The Act was not intended to deprive the company of any right which it had before, as to the mere location of the road. It did restrict the company to the mode of enjoyment of a privilege conferred on it; and when *445 ever, and so long, as the company availed themselves of the provisions of the Act, they were bound by them.
They could not use steam engines. This'was the view that was before Judge Richardson, in one part of his opinion in the case of the State vs. Tapper, Dud. 135. The question before him was, whether the defendant, as the representative of the company, had not been guilty of a nuisance, in using steam engines in the populous part of the city? The inhibition to use such engines, was too explicit to be mistaken; and as well under the provisions of the Act, as upon the general principles of the common law, it was determined that the defendant had been guilty of a nuisance. The question now made, was not then before the court; and whether the company had the right to extend its road from Line street, under its original charter, was not considered or determined. Judge Richardson uses some remarks, in connection with the subject before him, that would indicate his own opinion, that the company had terminated its road at Line street, and that its power under its charter had been thereby exhausted. He uses this language : “ and after so plain an acceptance of the further right, under the Act of 1832, to extend the road below Line street, without the use of steam power, it would be hazardous to conclude that the company had the absolute right, under their original charter, to extend the road from Line to Boundary streets, and to use locomotive steam power in that part, in defiance of the prohibition of the Act of 1832.” The question was, whether the company could use locomotive power by steam, from Line to Boundary streets, in a populous part of the city, without committing a nuisance. This was a question which was to be decided by reference to the conduct of the company; and if it undertook to avail itself of the Act of 1832, it could not violate its provisions without incurring the penalties of the law. The remarks of the Judge did not necessarily enter into the judgment of the court, and are fairly referable to the only question then before him. The company now contends, that although its rights, under its original charter, to use steam power within certain limits, may have been determined by *446 the judgment of the court, under the statement of facts before it, still, it has the power to extend its road, by virtue of that charter, in any direction that it may think will be to the interest and advantage of the company, acting within the provisions of the charter, and in subordination to the judgment of the court. A majority of us think its right to take the land of private individuals for the purpose of such extension, by either a voluntary purchase, or a purchase effected through the intervention of commissioners, to be appointed by the court, is unimpaired, and may be lawfully exercised.
The remaining question is one that might be of serious consideration, if it had not in effect been decided by the case of the Rail Road against Chappell. Under that decision, the company has all the powers of eminent domain, within the express limits of its charter, that had been possessed by the State. For the purpose of laying out and keeping up a public highway of a particular description, the company acts as the substitute of the State. The only difference is, that the attribute of sovereignty, which originally belonged to the State, has been transferred by express delegation to a corporate company. It cannot be an abuse of authority on the part, of the company, to exercise any or all of the powers that had been conferred upon it. It ought to act under a high sense of responsibility, and worthy of the powers that have been confided to it. It cannot usurp new powers, nor transcend those that have been delegated to it. Perhaps there may be cases, and when they arise it will be time enough to consider them, in which the company should be restrained by the interposition of judicial authority. But to judge of the necessity for requiring lands for the purposes of the road, is a power that belongs to the company by express grant. It is provided, both by the Acts of 1827 and 1835, that lands may be taken which may be required by the company. The requiring the land is the essential, and perhaps, only, condition. If the court can require the company to make to it some shewing of the necessity for requiring the lands, then the court must exercise its own judgment primarily in deciding on the propriety and necessity of the requisition. To do that, an *447 inquiry on the part of the court must, in some cases, be instituted. It could not do that by personal inquiry or investigation, but would have to appoint agents or representatives’ to acquire, and convey to it the desired information. In such a state of things, there might be a conflict of opinion between the agents of the court and the directors of the company, and that, too, on a mere matter of opinion. One must prevail, and which should that be 1 The answer is, let the body that has the express authority of law determine for itself. What, then, it be may asked, is the office of the court ? Primarily, its office is confined to that of the appointing power, — an office which may frequently demand diligence of inquiry and impartiality of decision, as to the fitness of the commissioners, who are - to decide on the valuation of the land in a contest between the owner and the company. Should the court undertake to determine that there was no necessity for the company’s making the requisition of this or that land, it would transcend its jurisdiction, and would withhold the essential, and perhaps, only means which the company could employ for the accomplishment of its designs, under its charter. It seems to me that the court has been entrusted with mere ministerial functions, and it depends on the judgment and discretion of the company to call them into exercise ; or, in other words, no jurisdiction is given to the court to inquire into the necessity or propriety of the requisition. Nothing is submitted to its judgment, save the question, who shall be the commissioners? It is the interest of the company, and prudence will suggest the propriety of consulting that, as well as justice, in the exercise of the power that has been deputed to them, to guard against capricious or wanton interference with private rights. When they shall so far forget these considerations, as to abuse, in a flagrant manner, the powers confided to them, or to usurp other powers not granted, the law, in the plenitude of its remedies, will afford the means and measure of relief. The occasion will better suggest the mode of redress, than can be indicated by speculative conjecture.
There is another view which should be noticed before the motion is disposed of. The individual before the court, who *448 is contesting the authority of the company, seems to contend that the company having already selected one track for the road, they must be confined to it. It is enough to say, that the company have come to a different conclusion, and now require other lands for their road. It would be hard to confine such a company to its first choice of lands in all cases. Trial and experience may have developed defects that could not have been foreseen, and which can only be remedied by a change of route. The errors of a first decision must be corrected by frequent alterations. It is well known that the company is continually making deflections and changes of location in the road, for the purpose of carrying out their plans with greater advantage to themselves and the public. The Legislature has thought proper to subject these matters to the judgment of the company and not to that of the court. The court cannot, either by appeal, for that is not provided in the'Act, or by a general supervisory power, undertake to control the company in the requisition which has been made for the appointment of commissioners to value the land in question. The application is made in the usual way — by motion. It has more than once fallen to my lot to hear such a motion, and I have only looked to the fitness of the commissioners that should be appointed. I may say that such has been, without exception, the common practice. The practice originated in the obvious meaning of the charter, and I can see no good reason for changing it now. With these views, a majority of us think that the circuit decision should be reversed, and that upon the renewal of the application on the part of the company, the Judge should appoint fit and impartial commissioners to make the valuation of the defendant’s land. Motion granted.
Richardson, O’Neall and Evans, JJ. concurred.